

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

May 14, 2021

By ECF

Honorable Valerie E. Caproni
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

      Re:   *Nat'l Audubon Soc'y v. U.S. Fish & Wildlife Serv.*, 21-CV-0448 (VEC), and *State of New York v. U.S. Dep't of the Interior*, 21-CV-0452 (VEC)

Dear Judge Caproni:

    These cases challenge a regulation concluding that the Migratory Bird Treaty Act ("MBTA") does not prohibit incidental take of migratory birds.  *See* 86 Fed. Reg. 1134 (Jan. 7, 2021) ("the January 7 rule").  After an April 9 status conference, the Court ordered the parties to submit a joint letter by May 14 proposing a schedule for production of the administrative record and briefing on motions for summary judgment.  ECF No. 45.  On May 7, defendant U.S. Fish & Wildlife Service (FWS) issued a proposed regulation that would rescind the January 7 rule.

    ***Audubon Plaintiffs and States***:  Defendants request a five-month stay due to the pendency of the proposed regulation.  The Court should deny that request and instead adopt the following schedule, which would promote timely resolution of these cases:

| | |
|---|---|
| **Friday, June 4**: | Audubon Plaintiffs' and States' opening briefs[1] in support of their motions for summary judgment are due. |
| **Monday, June 28**: | Defendants' production of the administrative record |

---

[1] The States reiterate their request to file separate briefs from the Audubon Plaintiffs, due to the logistical challenge of coordinating edits and approvals among twelve Attorneys General and seven environmental NGOs.  The States would agree to page limits to ensure that Defendants are not prejudiced by separate briefs.

|  |  |
|---|---|
|  | is due. |
| **Friday, July 9**: | Defendants' response to Audubon Plaintiffs' and States' motions for summary judgment is due. |
| **Friday, July 23**: | Audubon Plaintiffs' and States' replies in support of their motions for summary judgment are due. |

Plaintiffs respectfully request that the Court adopt this schedule for several reasons. First, as the FWS acknowledged in its proposed rule to revoke the January 7 rule, the January 7 rule: (a) "does not reflect the best reading of the MBTA's text, purpose, and history"; (b) "simply cannot be squared with [this] [C]ourt's holding that the MBTA's plain language encompasses the incidental killing of migratory birds"; and (c) "raises serious concerns with a United States' treaty partner, and for the migratory bird resources protected by the MBTA and underlying treaties." 86 Fed. Reg. 24,573, 24,573-75 (May 7, 2021). Thus, there is no dispute between the parties that the January 7 rule is contrary to the prevailing law in this District and otherwise unpersuasive. *See id.* at 24,573 (acknowledging that this Court has already "expressly rejected the rationale offered in the [January 7] rule"). Given this Court's previous holding that the MBTA's text is unambiguous, *Chevron* deference does not apply, and the January 7 rule should be invalidated.[2]

Second, as the FWS has also acknowledged, the January 7 rule is causing grave, ongoing harm to migratory birds. *See* 86 Fed. Reg. 8715 (Feb. 9, 2021) (recognizing that implementation of the rule "significantly impacts the public interest" and may have "significant impacts on migratory bird species and other resources"). There is therefore a compelling need—as well as a compelling, undisputed legal rationale—for the Court to vacate the rule as rapidly as possible. FWS has proposed to repeal the rule but that process may take substantial time with an uncertain conclusion. Indeed, the FWS has expressly "acknowledge[d] that the January 7 rule will remain in effect for some period of time even if it is ultimately determined, after notice and comment, that it should be revoked." 86 Fed. Reg. at 24,573. Plaintiffs' right to judicial review of a final agency action that is presently harming their (and the public's) interests should not take a back seat to a lengthy administrative process with an unpredictable future.

Third, pursuant to the Court's request at the April 9 conference, the Audubon Plaintiffs promptly amended their complaint to drop one of their claims and

---

[2] Although the January 7 rule referred to "policy" considerations along with legal ones, the rule was not a policy determination not to prosecute incidental takes under the MBTA. Instead, the rule interpreted the MBTA, determining that it did not cover incidental takes. 86 Fed. Reg. at 1165; *id.* at 1142 (explaining that FWS "adopt[ed] a regulation *limiting the scope of the MBTA* to actions that are directed at migratory birds" (emphasis added). That interpretation cannot survive under this Court's reading of the Act's plain terms or under Defendants' own current reading, as set forth in their recent proposed rule.

significantly streamline their other. *See* ECF No. 48. The amended complaint substantially narrows the issues to be litigated in these cases, such that Plaintiffs can file their opening briefs before Defendants produce a comprehensive administrative record. Although Plaintiffs continue to question the need for a comprehensive record in this case, *see Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266-67 (D.C. Cir. 2001) (explaining that a court does not need an administrative record to resolve whether a challenged regulation is consistent with the governing statute), they have proposed a schedule that will allow for production of the administrative record in 45 days, before Defendants file their response(s) to Plaintiffs' opening briefs. Under this schedule, the Court would also have access to the record when resolving the summary judgment motions.

Fourth, Defendants' request to stay this litigation for five months is inconsistent with the Court's April 9 order stating that "the Court is highly unlikely to entertain additional requests to delay this case." ECF No. 45. Defendants' alternative proposal that briefing be postponed until they produce an administrative record in 60 days would also unduly delay this litigation, given that (1) these cases have now been pending for five months, *cf.* Fed. R. App. P. 17(a) (requiring that agencies produce an administrative record 40 days after being served with a petition for review); (2) Defendants previously suggested that they could produce a record within 45 days, ECF No. 42; and (3) Plaintiffs can prepare and file their opening briefs before the administrative record is produced.

***Defendants***: On May 7, 2021, FWS published in the Federal Register a notice of proposed rulemaking to revoke the January 7 rule, *see* 50 C.F.R. § 10.14, that is the subject of this lawsuit. *See* 86 Fed. Reg. 24573 (May 7, 2021). The notice solicits public comments on issues of fact, law and policy raised by the January 7 Rule, and the 30-day comment period is scheduled to end on June 7, 2021. *Id.* at 24573, 24577. As stated in the Federal Register Notice, "by removing § 10.14 from subpart B of title 50 CFR, USFWS would revert to implementing the statute without an interpretative regulation governing incidental take, consistent with judicial precedent. This would mean that incidental take can violate the MBTA to the extent consistent with the statute and judicial precedent." *Id.* at 24578.

Defendants are sensitive to the Court's statement on the record during the April 9, 2021 initial conference and in its April 9 order that it "is highly unlikely to entertain additional requests to delay this case due to the pendency of a new regulation" [ECF No. 45]. However, Defendants respectfully request that, for the reasons set forth below, the Court consider their request for a further stay of this action to permit FWS to prioritize its limited agency resources towards concluding the current rulemaking process and promulgating a final rule after OMB review as expeditiously as possible.

The proposed rule would revoke the January 7 rule and, as sought by Plaintiffs in their complaints, "[r]einstate Defendants' interpretation and policy

regarding MBTA coverage in existence before the Jorjani Opinion." *Nat'l Audubon Society v. U.S. Fish & Wildlife Service*, 21 Civ. 448, Amended Complaint, at 26 [ECF No. 48].  *See also New York v. U.S. Dep't of the Interior*, 21 Civ. 452. Complaint, at 33 [ECF No. 1].  The Federal Register notice that FWS published after significant intra-agency and inter-agency consultations has commenced a notice and comment process that, as this Court previously observed in the M-Opinion cases, serves "[t]he dual purposes" of "reintroduc[ing] public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies, . . . and to assure that the agency is presented with all information and suggestions relevant to the problem at issue." *NRDC v. U.S. Dep't of the Interior*, 397 F. Supp. 430, 452 (S.D.N.Y. 2019) (quoting *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993)).

The expedited litigation process that Plaintiffs are pursuing is redundant of and disruptive to the agency's ongoing rulemaking effort.  It is redundant and wasteful because there is a regulatory process underway that follows Congress's mandated process for substantive changes to a rule under the APA, 5 U.S.C. § 553, and once completed, will likely moot this case altogether.  It is disruptive because the agency subject-matter experts responsible for compiling and reviewing the administrative record underlying the January 7 Rule are the same subject-matter experts who are responsible for reviewing and drafting substantive responses to comments on the proposed rule.  Although Plaintiffs suggest that the legal issues in this case are straightforward and can be resolved by this Court expediently because "*Chevron* deference does not apply," Defendants view the legal question on the permissibility and bounds of *Chevron* differently.  *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 507 (2d Cir. 2017) (upholding under *Chevron* EPA's interpretation of the Clean Water Act in its Water Transfers Rule, where agency's prior legal interpretation of the statute as articulated in informal policy statements and litigation positions was previously rejected under *Skidmore*).  The Court further stated on the record during the April 9 conference that a decision on the merits would not entail a straightforward analysis taken directly from the M-Opinion decision.  April 9, 2021 Tr. at 7–8.

In addition, Plaintiffs' desire for briefing on an aggressive schedule (with, among other things, Defendants' responsive brief and cross-motion due 8 business days after filing a voluminous administrative record) is based on the generalized and unsupported factual assertion that, absent a speedy judicial decision, there is "grave, ongoing harm to migratory birds." *Supra* page 2.[3]  Contrary to Plaintiffs'

---

[3] The extent to which the January 7 Rule may have "significant impacts on migratory bird species and other resources" is unknown because—as noted in the February 9 Federal Register notice cited by Plaintiffs—the "data are not readily quantifiable and available to determine the magnitude of those impacts," and there has been no "monitoring plan to ascertain the magnitude of those impacts after implementation of the final rule."  86 Fed. Reg. 8715, 8716 (Feb. 9, 2021).

suggestion that FWS concedes this point, the May 7 Federal Register notice states that "[i]t is . . . unknown how many businesses continued or reduced practices to reduce the incidental take of birds since publication of the [now-withdrawn M-Opinion] or issuance of the January 7 rule." 86 Fed. Reg. at 24579. Plaintiffs also have not shown that industry actors have been incentivized to eliminate or reduce existing best practices even after the agency published its Federal Register notice to revoke the January 7 Rule only 60 days after that rule went into effect on March 8.

Accordingly, Defendants respectfully propose a stay of this case for a period of five months, or **October 15, 2021**, which is when Defendants anticipate that the final rule will be published absent a diversion of resources towards this litigation. Defendants further propose filing status reports every 30 days on the progress of the current rulemaking. Should the Court deny Defendants' request for a further stay, Defendants alternatively request leave to file: (1) a certified administrative record no later than 60 days, or **July 13, 2021**,[4] with Plaintiffs to file their opening brief no later than 30 days after the filing of the administrative record, on **August 12, 2021**. Defendants will file their opposition and cross-motion 30 days afterwards, on **September 13, 2021,** Plaintiffs' reply, if any, will be due 15 days after Defendants' response, on **September 27, 2021**, and Defendants' reply, if any, will be due 15 days after that, on **October 12, 2021.** To the extent Plaintiffs have proposed filing their opening brief before the administrative record is filed, and are reserving the right to address points raised in the administrative record for the first time in their reply, Defendants would be prejudiced if they are denied an opportunity to respond.

We thank the Court for its consideration of and attention to these matters.

---

[4] FWS has determined that it will need 60 days to compile the administrative record, in large part because https://www.regulations.gov lists a total of 52,765 comments to the Jan. 7 Rule, the NEPA scoping notice, and the draft Environmental Impact Statement. In addition, the 60-day period will also accommodate the previously-scheduled annual leave in mid-June of two subject -matter experts who are responsible for compiling the record. Rule 17(a) of the Federal Rules of Appellate Procedure, which Plaintiffs cite for the proposition that Defendants should be able to complete the administrative record within 40 days, *see supra* page 3, is inapposite. Rule 17(a) deals with administrative records underlying "an order of an administrative agency, board, commission, or officer" that is the subject of a petition for review under Fed. R. App. P. 15(a), and even if it is a guidepost for this case, the 40-day period is not immutable, but often is extended in situations, as here, involving voluminous administrative records. *See* Fed. R. App. P. 17(a) ("The court may shorten or extend the time to file the record.").

|  |  |
|---|---|
|  | Respectfully submitted, |
| AUDREY STRAUSS<br>United States Attorney for the<br>Southern District of New York | LETITIA JAMES<br>Attorney General of the State of New York |
| By:  */s/ Tomoko Onozawa*<br>    Tomoko Onozawa<br>    Assistant United States Attorney<br>    212-637-2721<br>    tomoko.onozawa@usdoj.gov | By:  */s/ Matthew Eisenson*<br>    Matthew Eisenson<br>    Assistant Attorney General<br>    212-416-8446<br>    matthew.eisenson@ag.ny.gov |
| *Counsel for Defendants* | *On behalf of the States* |
|  |  /s/ Ian Fein<br>Ian Fein (admitted *pro hac vice*)<br>Natural Resources Defense Council<br>415-875-6147<br>ifein@nrdc.org |
| cc:    ECF service list | *On behalf of Audubon Plaintiffs* |